IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| The Cincinnati Insurance Company, ) | Case No. 4:24-cv-00951-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **OPINION AND ORDER** |
| ) | |
| Wayne Hunt; Levi Owens, *Personal* ) | |
| *Representative for the Estate of* ) | |
| *Christopher McLean*; Wilmington ) | |
| Shipping Company; ) | |
| ) | |
| Defendants.[1] ) | |
| _____ ) | |

This matter is before the Court on motions by Plaintiff Cincinnati Insurance Company ("CIC") for default judgment as to Defendants Wayne Hunt ("Hunt") and the Wilmington Shipping Company ("WSC") and for summary judgment. [Docs. 65; 77.]

## BACKGROUND[2]

On approximately October 1, 2013, CIC issued two insurance policies, bearing policy numbers EBA0104045 (the "Business Auto Policy") and ENP0104045 (the "Excess Coverage Liability Policy") (collectively, the "Policies"), to WSC. [Docs. 1 ¶¶ 2, 16; 75 ¶ 10.] This case concerns insurance coverage for an accident that occurred on December

---

[1] This caption represents the current parties in this litigation.

[2] Pursuant to the undersigned's Rule 56 Summary Judgment motion procedures, the parties submitted a joint statement of stipulated material facts [Doc. 75] and a movant's statement of material facts [Doc. 76]. The Court cites to these documents for the relevant facts included herein and to the Complaint [Doc. 1], the well pled factual allegations of which are taken as true against defaulting defendants in a motion for default judgment, *see* Fed. R. Civ. P. 8(b)(6).

10, 2013, in Marlboro County, South Carolina (the "Accident").  [Docs. 1 ¶¶ 2, 24; 75 ¶ 13.]  When the Accident occurred, Hunt, within the scope of his employment with WSC, was driving a truck that WSC had leased from Penske Truck Leasing Co., Ltd.  [Docs. 1 ¶ 26; 75 ¶ 14.]   Hunt was not a named insured under the Policies but had certain coverages available as a permissive user of the vehicles.  [Doc. 75 ¶ 12; see Doc. 1-5 at 56.]

When the Accident occurred, Christopher McLean ("McLean") was a passenger in a car driven by Maisha Jacobs, and he died from injuries he suffered in the Accident.  [Docs. 1 ¶¶ 24, 25; 75 ¶¶ 15–16.]  Defendant Levi Owens has been appointed by the Marlboro County Probate Court to act as personal representative for McLean's estate.  [Doc. 75 ¶ 5.]

On December 8, 2016, Owens filed a summons and complaint in the Marlboro County Court of Common Pleas (the "State Court"), Civil Action No. 2016-CP-34-00265 entitled *Levi Owens as Personal Representative of the Estate of Christopher McLean, Plaintiff v. Wayne Hunt, Defendant* (the "Wrongful Death Action").  [Docs. 1 ¶ 29; 75 ¶ 17.]  In the Wrongful Death Action, Owens alleged that Hunt was liable to Owens for damages as a result of the bodily injury and death McLean suffered in the Accident.  [Docs. 1 ¶ 29; 75 ¶ 18.]

Owens, through counsel, stated in proof of service to the State Court that he effected service on Hunt through the South Carolina Department of Motor Vehicles.  [Docs. 1 ¶ 30; 75 ¶ 20.]  On September 28, 2017, Owens's then-attorney executed an affidavit of default in the Wrongful Death Action.  [Docs. 1-9; 75 ¶ 21.]

On November 16, 2017, the Clerk of Court for the State Court filed an entry of default in the Wrongful Death Action that was executed by Judge Paul M. Burch. [Docs. 1 ¶ 35; 75 ¶ 22.] On October 22, 2018, Judge Burch filed an order of reference referring the Wrongful Death Action to a special referee (the "Special Referee"), for the Special Referee to take testimony and determine the amount of damages to which Owens was entitled. [Docs. 1 ¶ 38; 75 ¶ 23.]

On November 4, 2021, Owens's counsel filed a notice of hearing in the Wrongful Death Action. [Docs. 1 ¶ 40; 75 ¶ 24.] The notice included an affidavit of service stating that the notice was mailed to Hunt at 16671 NC Highway 210, Rocky Point, NC 28457. [Docs. 1-12; 75 ¶ 25.] On November 17, 2021, the Special Referee conducted a damages hearing in the Wrongful Death action. [Docs. 1 ¶ 43; 75 ¶ 26.] The next day, the Special Referee filed an order awarding default judgment to Owens in the Wrongful Death Action, finding that Hunt acted negligently and caused damages to Owens and awarding $5,000,000 in wrongful death damages and $100,000 in survival damages (the "Default Judgment Order"). [Docs. 1 ¶ 44; 75 ¶¶ 27–28.] At the time the Default Judgment Order was issued, CIC had not received notice of the Wrongful Death Action. [Docs. 1 ¶¶ 32, 34, 36, 39, 42, 70, 74; 76 ¶ 8.]

The Policies included language requiring that Hunt immediately send CIC copies of any summons or legal paper received concerning any "suit," as defined in the Business Auto Policy. [Docs. 1-5 at 62; 1-6 at 3, 8; 75 ¶ 30.] Neither Hunt nor Owens nor Owens's attorneys sent CIC notice of the Wrongful Death Action prior to entry of the default judgment. [Docs. 1 ¶¶ 39, 42, 45; 75 ¶ 29; 76 ¶ 7.] Indeed, Owens did not attempt to notify CIC of the Wrongful Death Action until September 8, 2023, and did not attempt to

notify CIC of the default judgment until February 29, 2024, when John E. Parker, Jr., sent a letter to CIC via email, with a copy of the filed judgment enclosed, requesting that CIC issue a check for the judgment amount. [Docs. 75 ¶¶ 31–32; 76 ¶¶ 11–12.] Once CIC received such notice, it promptly issued a reservation of rights and undertook to defend Hunt pursuant to that reservation of rights. [Docs. 1 ¶ 47; 76 ¶¶ 9–10.]

Plaintiff filed its Complaint in the present case on November 8, 2022, in the Eastern District of North Carolina. [Doc. 1.] The Complaint alleges, as is relevant here, that CIC did not receive timely notice of the Wrongful Death Action, in violation of the conditions of the Policies, and, as a result, CIC suffered material prejudice to its ability to investigate and defend the Wrongful Death Action. [Doc. 1 ¶¶ 70, 74, 77, 79.] The Complaint thus demands a declaration stating that CIC has no obligation under the Policies to defend Hunt or indemnify him in the Wrongful Death Action. [*Id.* at 14.] Hunt was served via personal service on November 16, 2022. [Doc. 9.] WSC was served on November 15, 2022, via United Parcel Service delivery to its registered agent, Elizabeth Ruffin. [Doc. 6.] Plaintiff filed a motion for entry of default on December 8, 2022, as to Hunt and WSC in the Eastern District of North Carolina. [Doc. 13.] The Clerk of Court for the Eastern District of North Carolina entered default as to Hunt and WSC on January 12, 2023. [Doc. 17.] On April 19, 2023, Judge Richard E. Myers II of the Eastern District of North Carolina entered orders of default judgment against Hunt and WSC. [Docs. 21; 22.] On February 23, 2024, Judge Myers issued an order vacating those default judgments and

transferring the case to this Court.[3]  [Doc. 36.]  Judge Myers did not vacate the entries of default against Hunt or WSC.

On November 18, 2024, Plaintiff moved for default judgment against Hunt and WSC.  [Doc. 65.]  On March 13, 2025, Plaintiff also moved for summary judgment. [Doc. 77.]  Defendants have not filed responses, and the time for doing so has expired.[4] Both motions are now ripe for review.

## APPLICABLE LAW

**Declaratory Relief**

The Declaratory Judgment Act provides that a court of the United States, "[i]n a case of actual controversy within its jurisdiction, . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act is "an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotation marks omitted). Courts generally should exercise jurisdiction over declaratory judgment claims "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in

---

[3] In that order, Judge Myers found that Hunt, WSC, Jacobs, and Owens are subject to personal jurisdiction in South Carolina and sets forth the basis for such jurisdiction. [Doc. 36 at 17 (noting that Owens and Jacobs are residents of South Carolina—conferring general jurisdiction—and WSC and Hunt are subject to specific jurisdiction because the Accident occurred in South Carolina).]  This Court has subject matter jurisdiction because complete diversity exists among the parties and the amount in controversy exceeds $75,000.  [Doc. 1.]

[4] Under the undersigned's Summary Judgment Motion Procedures, because no Defendant filed anything in response to the motion for summary judgment that disputed the movant's statement of material facts, all facts in that statement are deemed admitted for summary judgment purposes.

5

issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937) (internal quotation marks omitted).

**Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.

Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A)    citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B)    showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

**Motion for Default Judgment**

Rule 55 of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "A court must have both subject matter and personal jurisdiction over a defaulting party before it can render a default judgment." *United States v. Clark*, No. 3:17-cv-03440-JMC, 2019 WL 1122933, at *1 (D.S.C. Mar. 12, 2019) (internal quotation marks omitted). "Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction." *Choice Hotels Int'l, Inc. v. Bonham*, No. 96-

7

2717, 1997 WL 600061, at *1 (4th Cir. Sep. 30, 1997) (internal quotation marks omitted). Thus, prior to entry of default, a plaintiff must show that the defendant in question was properly served with the summons and complaint as required by Rule 4 of the Federal Rules of Civil Procedure.

In considering a motion for default judgment, the Court accepts as true all well-pleaded factual allegations in the Complaint not relating to the amount of damages. *See* Fed. R. Civ. P. 8(b)(6). Thus, regarding default judgments, the "appropriate inquiry is whether or not the face of the pleadings supports the default judgment and the causes of action therein." *Anderson v. Found. for Advancement Educ. & Emp't of Am. Indians*, No. 99-1508, 1999 WL 598860, at *1 (4th Cir. Aug. 10, 1999). The Fourth Circuit has a "strong policy that cases be decided on the merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment "may be appropriate when the adversary process has been halted because of an essentially unresponsive party," *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

## DISCUSSION

**Plaintiff's Summary Judgment Motion**

"In construing insurance policies, South Carolina courts [and federal courts applying South Carolina substantive law in diversity cases] apply the law of the state where the policy was issued." *Companion Prop. & Cas. Ins. v. Airborne Exp., Inc.*, 631 S.E.2d 915, 916 (S.C. Ct. App. 2006). Here, North Carolina law governs the interpretation of the Policies because they were issued to a North Carolina corporation at its principal place of business in Wilmington, North Carolina. [Docs. 1 ¶¶ 9–10; 75 ¶¶ 7–8]; *see*

*Companion Prop. & Cas. Ins.*, 631 S.E.2d at 916 (applying Georgia law to policy issued to a Georgia corporation and delivered to the corporation in Georgia).

To obtain coverage under the Policies as a permissive user of a WSC-leased vehicle [*see* Doc. 1-5 at 56], Hunt and/or WSC was required to comply with the notice requirements contained in the Policies as a permissive user of a WSC-leased vehicle. Included in the Business Auto Policy are duties imposed on any insured in the event of a suit:

> **2.    Duties in the Event of Accident, Claim, Suit or Loss**
>
> We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:
>
> **a.**   In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:
>
> > **(1)**   How, when and where the "accident" or "loss" occurred;
> >
> > **(2)**   The "insured's" name and address; and
> >
> > **(3)**   To the extent possible, the names and addresses of any injured persons and witnesses.
>
> **b.**   Additionally, you and any other involved "insured" must:
>
> > **(1)**   Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.
> >
> > **(2)**   Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".
>
> **(4)** Authorize us to obtain medical records or other pertinent information.
>
> **(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

[Doc. 1-5 at 62.]

The Excess Coverage Liability Policy incorporates the terms, definitions, conditions, limitations, and exclusions of the Business Auto Policy, except for terms and conditions related to duties to investigate or defend, the limits of insurance, the payment of expenses, the premium, cancellation, non-renewal, any renewal agreement, the policy period, or other provisions inconsistent with the Excess Coverage Liability Policy. [Doc. 1-6 at 3.] The Excess Coverage Liability Policy includes in its Conditions duties imposed on any insured in the event of a suit, stating:

> **4.     Duties in the Event of Occurrence, Claim or Suit**
>
> **a.** You must see to it that we and your underlying insurers are notified as soon as practicable of any occurrence which may result in a claim if the claim may involve this Coverage Part or any "underlying insurance". Notice should include:
>
> > **(1)** How, when and where the occurrence took place;
> >
> > **(2)** The names and addresses of injured persons and witnesses; and
> >
> > **(3)** The nature and location of any injury or damage arising out of the occurrence.
>
> **b.** If a claim is made or suit is brought against any "insured" that is likely to involve this Coverage

10

>
> Part or any "underlying insurance", you must notify us and your underlying insurers as soon as practicable.
>
> **c.** You must see to it that we and your underlying insurers:
>
> **(1)** Are assisted, upon our request, in the enforcement of any right against any person or organization which may be liable to any "insured" because of injury or damage to which this insurance may apply; and
>
> **(2)** Receive the "insured's" cooperation in the investigation, settlement or defense of the claim or suit.
>
> **d.** No "insured", except at their own expenses, will voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

[*Id.* at 8.]

"Notice provisions in insurance contracts have long been recognized as valid in North Carolina." *S.C. Ins. v. Hallmark Enters.* ("*Hallmark*"), 364 S.E.2d 678, 680 (N.C. Ct. App. 1988). Such provisions serve the purpose of allowing the insurer to begin its investigation and other necessary procedures promptly when a claim is made, thereby avoiding the prejudice that could occur from delayed notification. *Id.* Additionally, under North Carolina law, an insurer's duty to defend or indemnify "arises when an insurer receives actual notice of the underlying action." *Kubit v. MAG Mut. Ins.*, 708 S.E.2d 138, 153 (N.C. Ct. App. 2011).

North Carolina's courts utilize a three-step process (the "Three-Step Process") in evaluating an insurer's duty to defend or indemnify when an insurer objects that it did not receive timely notice: (1) first, the court must determine whether the insured gave notice

"as soon as practicable"; (2) if not, the court "must decide whether the insured has shown that he acted in good faith, e.g., that he had no actual knowledge that a claim might be filed against him"; and (3) "[i]f the good faith test is met [by the insured,] the burden then shifts to the insurer to show that its ability to investigate and defend was materially prejudiced by the delay [in reporting]." *Great Am. Ins. v. C.G. Tate Constr.*, 279 S.E.2d 769, 776 (N.C. 1981). Further, under the language of the Policies, "the submission of a 'claim' and the giving of a 'notice' of loss or damage are two separate and distinct occurrences," meaning that even reporting the Accident does not meet all reporting obligations under the Policies. *Metric/Kvaerner Fayetteville v. Fed. Ins.*, 403 F.3d 188, 198 (4th Cir. 2005) (interpreting different policy language). In this case, the Policies required not only that the insureds report the Accident but that they immediately send CIC copies of legal requests and legal papers received relating to suits. [Docs. 1-5 at 62; 1-6 at 3, 8.]

North Carolina's Supreme Court has stated that insurers generally satisfy the first step of the Three-Step Process simply by raising the timeliness of notice as an issue to the court "unless the insurer's allegations that notice was not timely are patently groundless." *Great Am. Ins. v. C.G. Tate Constr.*, 340 S.E.2d 743, 747 (N.C. 1986). The Court concludes that CIC has satisfied the first step in this action by raising timeliness of notice as an issue.

As for step two—concerning whether Hunt or WSC had a good faith reason for their delay—the Court will assume that they did as the issue is immaterial to the result in this case. That is so because, as the Court will explain, CIC is nonetheless entitled to

12

prevail under the third step because the record shows CIC was materially prejudiced by the delay in receiving notice of the suit.

It is undisputed that CIC did not receive notice of the Wrongful Death Action until after the default judgment was entered in Owens's favor. [Docs. 75 ¶¶ 29, 31–32; 76 ¶¶ 6–8, 11–12.] When CIC did eventually learn of the default judgment in the Wrongful Death Action from someone other than Hunt, CIC issued a reservation of rights, and it undertook defense of Hunt, pursuant to that reservation of rights. [Doc. 76 ¶¶ 9–10.] Because of the delay in CIC's notice of the Wrongful Death Action, CIC was prevented from investigating or litigating the Wrongful Death Action, and the Court issued a valid and enforceable default judgment against Hunt. Thus, the record demonstrates as a matter of law that this delay in notifying CIC of the Wrongful Death Action materially prejudiced CIC's ability to protect its interests. *See Hallmark*, 364 S.E.2d at 682 (holding that when an insurer did not receive notice of a lawsuit against its insured until after a default judgment had been entered against the insured, the insurer demonstrated that it had suffered material prejudice from the delay). The Court therefore concludes that Plaintiff prevails at the third step of the test and is entitled to summary judgment.

**Plaintiff's Motion for Default Judgment Against Hunt and WSC**

"In ruling on a motion for default judgment, the court may conduct a hearing in order to . . . (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *J.M. Smith Corp. v. Tom's Family Pharm., Inc.*, No. 7:20-cv-2815-TMC, 2021 WL 5862153, at *2 (D.S.C. Jan. 27, 2021) (citing Fed. R. Civ. P. 55(b)(2)). In this case, based on Plaintiff's filings, the Court finds that a hearing on the motion is unnecessary.

For the reasons already discussed in relation to Plaintiff's summary judgment motion, the Court concludes that the allegations in the Complaint support Plaintiff's entitlement to the declaratory relief requested. As such the Court declares that Plaintiff has no duty to defend or indemnify Hunt under the Policies regarding the Wrongful Death Action.

## **CONCLUSION**

In light of the above, Plaintiff's motions for default judgment and summary judgment [Docs. 65; 77] are both GRANTED.

IT IS SO ORDERED.

s/Jacquelyn D. Austin<br>United States District Judge

Florence, South Carolina
June 25, 2025